LYMAN and others vs. PLACE and others.

1. An objection on the ground of misjoinder of complainants, cannot prevail at the final hearing.

2. Judgments recovered against a debtor after he had conveyed away his property, were, on suggestion of the creditor, decreed to be made out of a note given by the grantee for the consideration of the conveyance, instead of out of the property itself.

On final hearing, on pleadings and proofs.

*Mr. J. J. Bergen,* for complainants.

*Mr. John Schomp,* for defendants.

THE CHANCELLOR.

The bill is filed by Frederick Lyman, Christoper Ehni, and Elias Van Fleet, against Joseph V. Place, and his wife, and Joseph Morehouse, (who is Place's brother-in-law,) to subject certain premises, a house and lot in Raritan, in Somerset county, or the amount of a promissory note, received by Place and his wife from Morehouse for the consideration of the conveyance of the property by them to him, or so much thereof

as may be necessary for the purpose, to the payment of certain judgments; one recovered by Lyman against Place, and the other by Ehni and Van Fleet against him, both in the Somerset Circuit Court. The bill alleges that the premises were, and are, really, the property of Place, though the legal title thereto was, up to a period shortly after the commencement of the suits which resulted in the above judgments, in his wife, and he and she, before the judgments were recovered, conveyed the property to Morehouse. The bill claims that the conveyance to Morehouse was in fraud of the creditors of Place.

Objection was made, at the hearing, that there was a misjoinder of complainants. This objection cannot prevail, for the reasons given in disposing of the like objection made at the hearing, under like circumstances, in *Annin* v. *Annin*, 9 *C. E. Green* 184, 188. The evidence shows that the property which was conveyed to Mrs. Place by La Rue Vredenburgh, in or about April, 1870, was paid for with money borrowed of a building loan society on certain shares therein, which originally stood in Place's name, and which he transferred to his wife, and certain money borrowed by Place, which he still owes. The price paid to Vredenburgh was $925. The proof is, that the shares, which were five in number, were subscribed for by Place, and taken in his own name; that they stood in his name for about a year and a-half thereafter, when he transferred them to his wife; that the dues on them, up to the time when they were "bought out," were $5 a month, and after that, $10.83⅔; that they were "bought out" as a means of obtaining the money to buy the property of Vredenburgh; and that for two years and a-half, up to December, 1873, the dues were paid by Place out of his wages. Each share, at the last mentioned date, was worth, as is testified, a little over $100. Place says he will not say that the dues were not paid out of his wages for the first three years, and the shares appear to have been subscribed for in February, 1868. There seems to be no room for doubt that the shares were, at the time of the purchase of the premises

in question from Vredenburgh, the property of Place, and that thereafter, up to December, 1873 (the bill was filed in January, 1874), the dues were paid with his wages, with perhaps the aid of the rent received for part of the house. The attempt is made by Place and his wife to show that the latter was the actual owner of the shares from the beginning, and they set up an understanding which they say was had between them, by which, in consideration that her earnings were spent in assisting in the support of the family, she was to have the benefit of his payments, made out of his wages, on the shares. It is enough to say that this agreement is not established by the proof. The shares were subscribed by Place, and stood in his name for a year and a half, up to about the time of the purchase of the house and lot, and his wages paid the dues. Afterwards, the dues were paid with his wages, and he gave to his creditors as a reason for not paying his bills contracted for household supplies, that he had to pay his dues on the shares out of his wages, and that his employers retained part of his wages for the purpose. Indeed, the debts for which the judgments of the complainants were recovered, were contracted by Place for family supplies; and in the fall of 1872, he told Lyman the reason why he did not pay his debt to him was that he had the building loan to pay monthly, and had a good deal of sickness in his family; that his wife had been sick considerably, and he had doctors' bills to pay. Since the purchase of the property, Place has put a new fence around it, at his own expense. It may be observed that the case, as presented by the defendants, Place and his wife, is within the ruling of this court, in *Skillman* v. *Skillman*, 2 *Beas.* 403.

On the hearing, the complainants' counsel expressed his willingness to look for satisfaction of the complainants' debt, to the note given by Morehouse on account of the purchase money of the property, instead of to the property itself. This renders it unnecessary to pass upon the conveyance to Morehouse. Satisfaction of the complainants' judgments, with the costs of this suit, will be decreed to be made out of the money due from Morehouse on his note.